**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: September 21, 2018
Date Decided: October 23, 2018

Brian E. Farnan
Michael J. Farnan
Rosemary J. Piergiovanni
Farnan LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801

Kevin G. Abrams
J. Peter Shindel, Jr.
Matthew L. Miller
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

Anthony A. Rickey
Margrave Law LLC
8 West Laurel Street, Suite 2
Georgetown, DE 19947

Jeremy D. Eicher
Eicher Law LLC
1007 N. Orange Street, 4th Floor
Wilmington, DE 19801

        Re:    *Stein v. Blankfein et al.*, Civil Action No. 2017-0354-SG

Dear Counsel:

This matter is before me on a motion to approve the settlement of derivative claims brought purportedly on behalf of Goldman Sachs Group, Inc. (the "Company"). The Plaintiff, Shiva Stein, commenced this action on May 9, 2017 against certain of the Company's directors (the "Director Defendants"), as well as against the Company itself as a nominal defendant. The Complaint contained two

derivative counts for relief, as well as direct claims brought individually, and not on behalf of a class, by the Plaintiff as a stockholder of the company.

In considering the settlement of the derivative claims, this Court must examine from the Company's point of view both the claims compromised by the Plaintiff, and the results achieved thereby. Here, the claims compromised are allegations that the Company's directors are liable to the Company for excessively compensating themselves and for issuing stock-based incentive awards in reliance on stock incentive plans that were void at the time of the award. These claims are assets of the Company. The original settlement agreement contained a rather broad release of derivative claims; after an objection to the settlement was filed, the release was narrowed. Nonetheless, the settlement, if confirmed, will release all stockholders' and the Company's rights to assert these and related claims going forward. This is the "give" by the Company and its stockholders. Against this, to fulfill my role to protect those parties, I must weigh the "get."

Both the Plaintiff and the Director Defendants assert that the "get" arises from the settlement of the Plaintiff's direct claims. Those claims are composed of allegations that the Director Defendants breached fiduciary duties in failing to make required disclosures in connection with the Company's recent stock incentive plans and proxy statements. These are post-facto claims for damages and equitable relief. The Plaintiff has agreed to release these claims as well. The Director Defendants,

2

for their part, will cause *the Company* to do certain beneficial things, including making certain disclosures in the future and continuing certain practices, already implemented, with respect to executive compensation for at least three years. The Plaintiff alleges that the disclosures will bring future stock incentive plans into compliance with the Plaintiff's interpretation of federal law, thus conveying a large but hypothetical monetary benefit on the Company.

After the Complaint in this matter was filed, the Director Defendants moved to dismiss. That motion was fully briefed, but not submitted; before oral argument, the Parties reached the settlement at issue. To summarize, the posture is: the Plaintiff has given up direct claims for damages and equitable relief, as well as derivative claims for damages and equitable relief belonging to the Company, in return for the Defendants' agreement to cause the Company to take actions beneficial to corporate hygiene. The Plaintiff argues that the derivative claims were meritorious when filed, and are sufficient to survive the fully briefed motion to dismiss. The Plaintiff also maintains that the disclosures that the Company has agreed to make are required in any event pursuant to the Director Defendants' fiduciary duties. Under these particular circumstances, I do not find the release of derivative claims fair to the Company. I set out the basis for this determination below.

3

## I. BACKGROUND

The Plaintiff brought claims both individually as a stockholder of the Company and derivatively on behalf of the Company. None of the direct claims were brought on behalf of a class. This matter involves the following allegations in the Complaint:

1. A direct claim for breach of fiduciary duty against the Director Defendants based on failure to disclose material information to stockholders when they approved the Company's 2013 and 2015 Stock Incentive Plans (the "2013 and 2015 SIPs"); in particular, information required by Treas. Reg. § 1.162-27(e)(4)(v) and SEC regulation 17 C.F.R. § 240.14a-101 (Item 10(a)(1)) ("Schedule 14A (Item 10(a)(1))");[1]

2. A direct claim for breach of fiduciary duty against the Director Defendants based on partial disclosure of material information in the 2015, 2016, and 2017 proxy statements concerning the tax deductibility of cash-based incentive awards to named executive officers made from 2011 to 2016;[2]

---

[1] Compl. ¶¶ 32–36, 56–61. Treas. Reg. § 1.162-27(e)(4)(v) requires disclosure "on the same standards as apply under the Exchange Act," which would then include SEC regulation 17 C.F.R. § 240.14a-101 (Item 10(a)(1)), which with respect to compensation plans requires that a company "identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation."

[2] Compl. ¶¶ 37–45, 67–71.

4

3. A derivative claim for breach of fiduciary duty against the Director Defendants based on excessive compensation awards to non-employee directors;[3]

4. A derivative claim for breach of fiduciary duty against the Director Defendants based on issuing stock-based awards under the 2013 and 2015 SIPs, which are void given that they were approved by uninformed shareholder votes.[4]

The Director Defendants filed a Motion to Dismiss the Complaint on July 27, 2017. The Motion to Dismiss was fully briefed but was not argued or decided. Instead the Parties submitted a Stipulation and Agreement of Compromise, Settlement, and Release (the "Proposed Settlement") on March 20, 2018. The Proposed Settlement lists as "Settlement Consideration":

1. Plaintiff's Counsel would be provided with draft proxy disclosures related to the proposed 2018 Stock Incentive Plan, for review and comment before the 2018 Proxy Statement was filed with the U.S. Securities and Exchange Commission;[5]

---

[3] *Id.* ¶¶ 20–31, 51–55.
[4] *Id.* ¶¶ 36, 62–66.
[5] Stipulation and Agreement of Compromise, Settlement, and Release 15 [hereinafter "Proposed Settlement"].

2. The Company will make the following disclosures in the 2018 Proxy Statement:

   a. A disclosure that non-employee director compensation is "the highest among its U.S. peers,"[6]

   b. A disclosure that reiterates the Good Faith Standard, which governs the discretion to make awards under the proposed 2018 Stock Incentive Plan (the "2018 SIP"),[7]

   c. A disclosure that identifies each class of persons who will be eligible to participate in the proposed 2018 SIP and the approximate number of persons in each of those classes, as required by Schedule 14A (Item 10(a)(1)),[8]

   d. A disclosure describing the anticipated impact of the Tax Cuts and Jobs Act on the Company's compensation program for named executive officers;[9]

3. For three years after the final approval of the Settlement, the Company will continue certain director compensation practices, and disclose them in its annual proxy statements.[10]

---

[6] *Id.* at 16.
[7] *Id.*
[8] *Id.*
[9] *Id.* at 16–17.
[10] *Id.* at 17.

6

In support of the Proposed Settlement, the Plaintiff argues that the settlement provides substantial benefit, in large part, because the disclosure of the class of persons and approximate number of persons in those classes eligible to participate in the 2018 SIP brings the 2018 Proxy Statement into compliance with Schedule 14A (Item 10(a)(1)).[11] Without such compliance, the Plaintiff believes, the 2018 SIP could be nullified or terminated,[12] which in turn would mean that the Company could not properly take tax deductions associated with the 2018 SIP.[13] The Plaintiff "estimates that the value [to the Company] of the deferred tax assets from the grants under the 2018 SIP from now until the 2022 annual meeting of stockholders is $1.4 billion."[14]

Sean J. Griffith (the "Objector"), a stockholder of the Company, filed an Objection to Proposed Settlement and Application for Attorney's Fees and Expenses on June 5, 2018.[15] The Objector challenges the Plaintiff's calculation of the benefit of ensuring that the 2018 SIP complied with Schedule 14A (Item 10(a)(1)).[16] The Objector further argues that the Plaintiff's review of the 2018 Proxy disclosures provides no value, that the 2018 Proxy disclosures mandated by the Proposed

---

[11] Pl. Br. in Support of Mot. Approval Proposed Settlement and Appl. Award Att'ys' Fees Expenses 20.
[12] Id. at 21.
[13] Id. at 23.
[14] Id.
[15] Sean J. Griffith's Objection to Proposed Settlement and Appl. Att'ys' Fees Expenses.
[16] Id. at 29–33.

Settlement are not material, and that the agreement to continue certain director compensation practices that were already in place provides no benefit.[17] Further, the Objector opposes the Release in the Proposed Settlement as overly broad, and challenges the propriety of release of the derivative claims at issue in this matter.[18]

The original proposed release provided that the Plaintiff, the Company, and stockholders of the Company acting derivatively released the "Released Defendant Parties" from every one of the "Released Plaintiff Claims,"[19] which in pertinent part was defined as claims, including unknown, foreign and anti-trust claims, that arose or could have arisen from:

"(i) the Action; (ii) the subject matter of the Action; (iii) the actions described in any of the pleadings, briefs, or filings of Plaintiff in the Action; (iv) the GS Group Non-Employee Director compensation disclosed in the Proxy Statements; (v) the disclosures made in connection with the approval by GS Group stockholders of the SIPs; (vi) stockholder approval of the SIPs; (vii) the disclosures made in the Proxy Statements about Non-Employee Director compensation and the corresponding SIPs; or (viii) the disclosures in the

---

[17] *Id.* at 34–41.
[18] *Id.* at 41–42.
[19] Proposed Settlement 16–17.

Proxy Statements, including regarding tax-deductibility, of awards under GS Group's Long-Term Incentive Plan." [20]

After the Objection was filed, the Plaintiff and the Director Defendants narrowed the Release; revising the definition of "Released Plaintiff Claims" to remove unknown, foreign and anti-trust claims,[21] and limiting released claims to those over fiduciary or disclosure duties.[22] The quoted language above from the original release changed in substance through the deletion of (vii) and (viii).[23]

## II. LEGAL ANALYSIS

Delaware policy views the voluntary settlement of legal contests as in the public interest. However, class and derivative actions pose obvious agency problems;[24] as such, before a plaintiff binds the class, the Court must approve the settlement for the protection of the class. In evaluating fairness to that interest, the Court "should look to the legal and factual circumstances of the case, the nature of the claims, and any possible defenses."[25] In assessing these factors, I must bring my business judgement to bear on the issue.[26]

---

[20] *Id.* at 13.

[21] Director Defs.' Response to Sean J. Griffith's Objection to Proposed Settlement, Ex. B.

[22] The Director Defs.' Response to Sean J. Griffith's Objection to Proposed Settlement 15; Pl.'s Responsive Br. to Sean J. Griffith's Objection to Proposed Settlement and Appl. Att'ys' Fees Expenses 14.

[23] Director Defs.' Response to Sean J. Griffith's Objection to Proposed Settlement, Ex. B.

[24] *See generally In re Riverbed Tech., Inc. S'holders Litig.*, 2015 WL 5458041 (Del. Ch. Sept. 17, 2015).

[25] *Ryan v. Gifford*, 2009 WL 18143, at *5 (Del. Ch. Jan. 2, 2009).

[26] *Id.*

In addition to the general agency problem just referenced, this case poses unique concerns. On one side of the litigation is the Plaintiff, a stockholder, pursuing direct claims, as well as derivative claims with which she purports to act on behalf of the Company, against the Director Defendants. On the other side are those Director Defendants, who control the Company. The claims seek money damages and disgorgement from the Director Defendants. Pursuant to the Proposed Settlement, in return for a release of the monetary claims against them, the Director Defendants give up *nothing*. Instead, they cause *the Company* to take or refrain from certain actions that, according to the Plaintiff, are beneficial to the Company, but that in any event (per the Plaintiff) are largely mandatory given the Director Defendants' fiduciary duties. According to the Director Defendants, this action was not meritorious when filed; they briefed a motion to dismiss, which this settlement would render nugatory. This is the settlement I must consider.

As the Plaintiff points out, there are uncertainties inherent in any litigation, which the Parties seek to avoid here via settlement. The Plaintiff argues, as laid out above, that the disclosures she has achieved will allow the Company to properly recognize future income tax deductions and tax-deferred assets associated with the 2018 SIP—tax benefits that the Plaintiff avers will be greater than one billion dollars. I note that, to the extent this is true, it makes the direct disclosure claims for failing to disclose the same information in relation to the 2013 and 2015 SIPs, which the

10

Plaintiff releases in return, all the more valuable. The Objector argues that the disclosures and action mandated by the Proposed Settlement lack value to the Company. The Director Defendants argue the same; nonetheless, they support the Proposed Settlement because the release thus obtained ends litigation of the derivative claims, which they see as meritless but an expensive distraction to the Company.

What this action has done is restate claims of violations of securities law[27] as state disclosure claims brought directly on behalf of a stockholder, and tacked on derivative claims against directors for conflicted and improper awards to themselves and employees. The Director Defendants support a settlement that voids the derivative claims for damages *against them*—claims that are assets of the Company—by agreeing to have *the Company* take or maintain future acts of corporate hygiene. Those actions, largely relating to the direct disclosure claims, may well have merit (although again, to the extent they are valuable, the disclosure claims given up are also valuable). However, they are unrelated to the damages/disgorgement claims for conflicted overpayment that are the heart of the derivative claims.

---

[27] In this case, SEC regulation 17 C.F.R. § 240.14a-101 (Item 10(a)(1)). Professor Griffith, the Objector, detailed several prior instances in which this Plaintiff brought similar proxy disclosure violations related to Section 14(a) of the Exchange Act—involving other corporations—in federal court, and did so only via individual claims. *See* Sean J. Griffith's Objection to Proposed Settlement and Appl. Att'ys' Fees Expenses 3, 20–23.

It is true that no one else has stepped forward to litigate these derivative claims. However, the release will prevent the claims from *ever* being litigated. Under these circumstances, I do not find it reasonable to approve a settlement that effectively resolves direct claims belonging to the Plaintiff in return for voiding potentially-meritorious monetary causes of action belonging to the Company. Therefore, I cannot approve the Proposed Settlement.

The Plaintiff has requested an award of attorney fees; for the forgoing reasons that request is denied without prejudice. The Objector, whose litigation efforts I have found helpful, has also sought attorney fees. The Parties should consult on an appropriate fee award to the Objector, and inform me what further action of the Court is required.

To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III